The opinion of the court was delivered by
TilghmAjSY'C. .T.
This action was brought in the name of David Meade and others, (fifteen in all,) trustees of the Meadville seminary of learning, against John Davis, to recover the amount of a subscription made by the said iJavis, of the sum of one hundred and fifty dollars, for the use of the said seminary. On the trial of the cause, the plaintiffs offered in evidence, the original subscription book, in which was the name of the defendant, for one hundred and fifty dollars. To this evidence the counsel for the defendant objected, and on its being admitted by the court, they took a bill of exceptions. The first objection to the evidence was, that the subscription was void, because the trustees had not pursued the directions of the act of assembly, by which they were authorized to take it. The subscription bears date the 21st of Jlpril; 1800, and was taken under the act of the 12th of March, 1800, by which, the county of Crawford was erected. The fourth section of the act enacts, that the seat of justice shall be at Meadville; “ provided the proprietors and inhabitants ofsthat town and its vicinity, subscribe and secure the payment of four hundred dollars to the trustees of the county, either in specie or land, at a reasonable appraisement, within four months from the passing of the act, for the use of a seminary of learning, in the said county;” and'in case of neglect or refusal to do this, the trustees are authorized and required to fix the seat of justice at any place within four miles of Meadville. David Meade, Frederick Haymaker, and James Gibson, were appointed by the said act, trustees of Crawford county; and by the terms of subscription, underwritten by the defendant and others, the subscribers were to pay the money, and give security, if required. It is very clear, that the subscription book was legal evidence. It went directly in support of the plaintiffs’ declaration. Whether they could recover, without proving afterwards that security was given, is another question; nor is it possible for this court to know whether such proof was in the power of the plaintiffs. I would by no means be understood, however, as giving an opinion, that proof of security, other than the subscription, was necessary. This case is quite different from The Hibernia Turnpike Company v. Henderson, 8 Serg. & Rawle, 219, so much relied on by the counsel for the defendant. There the act of assembly, by which the company was incorporated, expressly required, that the sum of five dollars, on each share of stock, should be paid at the time of subscribing. But the act authorizing subscriptions to the Mead-ville seminary required no such thing. It was enough, if the proprietor and inhabitants of the town, secured the payment of four hundred dollars at any time within four months from the passing *283 of the act. And even if they did not, it is not said that the subscriptions should be void, but that the trustees should fix the seat of justice at some place within four miles of Meadville. On this point, however, which it is unnecessary to decide, I forbear to give anv opinion. All that is at present decided, is, that the subscription book was evidence. But there was another objection to the evidence, which calls for an opinion, because it lies at the root of the action, and is this. That, by the terms of the subscription, the money was payable to David Meade, James Gibson, and Frederick Haymaker, whereas this action was brought in the names of fifteen persons, trustees for the Meadville seminary. This, prima facie, is an insuperable objection, which it lies on the plaintiffs to answer. , And their counsel say, they have answered it. Whether they have, or not, will depend on several acts of assembly; which, it must be confessed, have made a case involved in considerable confusion. First, then, the subscriptions were taken, payable to the three before-named persons, appointed by the act of the 12th of March, 1800, trustees of Crawford county., Next came the act of the 2d of .April, 1802, 6 Carey & B. 271, by which David Meade and others (seven in all,) were appointed trustees for a public seminary, at Meadville, in whom was vested the right of receiving the money subscribed before that time, for the use of the said seminary. Next in order is the act of the 4th of Jlpril, 1805, 7 Carey & B. 528, by which eight additional trustees were appointed, making, in the whole, fifteen; and in them were vested all the powers, &c, which were given to the first seven, by the act of the 2d of April, 1802. The present action was brought by these fifteen trustees, to August term, 1805. There is no doubt, therefore, that the action was properly commenced. But the defendant says, that, by other acts, passed subsequent to the commencement of the suit, the right of action of the plaintiffs was abolished. The acts alluded to were passed, one on the 31st of March, 1807, (pamph. law, 94,) the other on the 28th of March, 1808, (pamph. law, 175.) By the first of these acts, a seminary of learning was established, called the Meadville academy, with nineteen trustees, who were incorporated. By the act of the 28th of March, 1808, all powers given by any act passed before the 31st of March, 1807; in relation to the Meadville Seminary were repealed and revoked; and the former trustees of the said seminary were made accountable for any money received by them, or any of them, to the trustees, incorporated by the act of the 3Lst of March, ÍS07. After this, was passed the act of the 20th of March, 1811, by which there was established a public school, or academy, by the name of the Meadville academy, under the direction of six trustees, with power to hold property of any kind, real or personal, provided the yearly income, or value, did not exceed four thousand dollars. And last of all, we have an act passed on the 28th of January, 1812, (being a supplement to the *284 act of the 20th of March, 1811,) which has an important bearing on the present question. By this act, all lands, tenements, and property of every kind, vested in the trustees for a public seminary of learning at Meadville, by virtue of an act to empower the trustees of Crawford county to erect a suitable building, &c. (passed the 2d of Jlpril, 1S02,) and the acts supplementary thereto; and of an act granting a sum of money to the Meadville seminary, &c. were transferred to, and vested in, the trustees appointed by the act of the 20th of March, 1811, and the powers of all former trustees, appointed by any act prior to that of 1811, were revoked and annulled; but it was expressly provided, that no suit, brought by any trustees whose office was thereby abolished, for any money due to a seminary of learning, in the town of Meadville, should abate, or be discontinued; but the same should be continued, and prosecuted to judgment and recovery. Now, although it would seem, that the present action, which was brought in the year 1805, might have been discontinued, if application had been made to the court for that purpose, after the passing of the act of the 28th of March, 1808, by which the authority of the plaintiffs was revoked; yet it happened, that no such application was made, and the action was depending at the time of passing the act of January, 1812. The question then is, did the act of January, 1812 protect this action, and authorize the plaintiffs to proceed to judgment and recovery of the debt. The defendant says it did not; because the act of January, 1812, protected only actions then depending, which had been brought by trustees whose powers were thereby annulled, and, therefore, had no effect on this action, which was brought by trustees whose powers had been annulled by the act of the 28th of March, 1808. But I am not satisfied with this x-eason. If the act of 1812 had expressly given life and continuance to this action, thei’e is no doubt that it would have been revived and continued. Now, although this is not done expressly, yet the intent of the legislature cannot be doubted, because it is clear, that it was intended by the act of 1812, to annul the powers vested by former acts in the plaintiffs; and that the legislature did not advert to the circumstance of these powers having been revoked before. Their expressions are very general. They annulled all powex’s granted to any trustees px'ior to the act of 1811. And it is no wonder if they were bewildered, among the variety of acts which had been passed concerning the Meadville seminary. The act of 1812 should have a liberal construction, because its object was to do justice — to give a fair trial in actions which had been brought against subscribers to the Meadville academy, and prevent the defendants from escaping by accident. It has not been shown that there was any suit depending, to which that act could have relation but the present. And even if it had, I think the intention sufficiently clear, to prevent the abatement of any suit, brought by trustees appointed by any act of assembly prior to the *285 act of 1811. I am of opinion, therefore, that the action may be maintained in the name of the plaintiffs.
There were two other exceptions to the opinion of the court, on points of evidence. The defendants offered to prove, that, at the time of the defendant’s subscribing, Roger Mden made him several promises, which had been broken' — viz. that he would procure subscriptions to the academy to the amount of eight thousand dollars, also, a large library; and, moreover, that he would obtain for the defendant, from the Holland company, their right to a valuable tract of land, in the neighbourhood of Meadville. But this evidence was rejected by the court. This action is founded on a written contract, to which Roger Mden was no party. The subscription money was payable to other persons; and it does not appear, that he had any authority to alter the written terms of subscription, by promises such as have been mentioned. The case, therefore, does not fall within the range of those authorities, by which parol evidence of what passed between the parties, at the time of execution of a written instrument, has been admitted. But there is, moreover, a special reason against the admission of this evidence. The defendant, by putting his name to the general subscription paper, held out to other subscribers, a demonstration of having subscribed unconditionally. This might have been an inducement to others to subscribe. It is not fair, therefore, with respect to other subscribers, to set up a secret parol agreement, by which the defendant was to be discharged from his subscription, unless certain conditions were performed hy Roger Mden. Upon the whole, I am of opinion, that the evidence was properly rejected, and the judgment should be affirmed.
Judgment affirmed.